IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:14-cv-2565-RM-MJW

WELLS FARGO INSURANCE SERVICES
USA, INC.,

Plaintiff,

v.

GLENN W. MCQUATE,
PAUL PROUTY, and MARY WONG,

Defendants.

**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
ON ALL COUNTERCLAIMS**

Plaintiff Wells Fargo Insurance Services USA, Inc. ("Wells Fargo"), by and through its undersigned counsel, respectfully moves pursuant to Fed. R. Civ. P. 56 for entry of summary judgment in its favor on each of Defendant McQuate's, Defendant Prouty's, and Defendant Wong's (collectively "Defendants") counterclaims.

**I.   INTRODUCTION**

Defendants suddenly, and without prior indication, announced their resignations as leaders of Wells Fargo's energy and mining insurance practice on Friday, August 22, 2014. [Statement of Undisputed Material Facts ("SUMF") ¶¶ 12-14, 30-31.]   Then, on the next business day, they set up shop as the leaders of a new Denver office that one of Wells Fargo's direct competitors was opening for them.  [SUMF ¶¶ 31, 35-36.]   That same week, two Wells Fargo clients moved their business to Defendants at their new employer.  [SUMF ¶¶ 37-38, 41.]

1

Wells Fargo filed this action to stop Defendants from further actual and threatened misappropriation of its confidential information and trade secrets and to enforce its related contractual rights to be free from unlawful competition. [SUMF ¶ 42.] Since filing this action, Defendants have continued to violate Wells Fargo's rights. [SUMF ¶¶ 1-8, 44-47.]

Each Defendant filed identical counterclaims for (1) "bad faith" under the Colorado Uniform Trade Secrets Act, C.R.S. §7-74-105, (2) tortious interference with prospective business relationship, and (3) abuse of process. [Doc. 36-1; Doc. 37-1; Doc. 38-1.] In addition, Defendants McQuate and Prouty each filed a counterclaim for vacation pay under the Colorado Wage Claim Act, C.R.S. §§ 8-4-101 *et seq*. [Doc. 36-1; Doc. 37-1.] As discussed below, these counterclaims lack merit, and this Court should enter summary judgment against Defendants on all counterclaims.

## II. ARGUMENT

### A. Summary Judgment Standard.

Summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. Although the court must construe the factual record and reasonable inferences in the light most favorable to the non-moving party, *Kaul v. Stephan*, 83 F.3d 1208, 1212 (10th Cir. 1996), summary judgment is proper when the claimant fails to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

### B. Wells Fargo Is Entitled To Summary Judgment On Each Defendant's Bad Faith Counterclaim.

#### *1. Defendants have not asserted a cognizable cause of action.*

As an initial matter, C.R.S. § 7-74-105 does not create a cause of action on which to seek a substantive judgment. Instead, it merely provides a procedural right to fee shifting, conditioned on a post-trial finding that a trade secret misappropriation claim was made in bad faith.

The proper timing and procedure for the use of C.R.S. § 7-74-105 is demonstrated in *Hertz v. Luzenac America, Inc.*, 04-cv-01961-LTB-CBS, 2007 WL 135614 (D. Colo. Jan. 16, 2007). Procedurally, *Hertz* arose as a ***post-judgment Rule 59(e) motion to amend a preexisting judgment to include fees***, focusing on whether plaintiff's arguably frivolous trade secret misappropriation claim was brought in bad faith. Counsel for Wells Fargo has been unable to locate any case in which a ***cause of action*** under C.R.S. § 7-74-105 has been pled or addressed by the courts, and therefore submits it is not a cognizable claim. For this reason alone, Defendants' bad faith counterclaims fail as a matter of law.

#### *2. Defendants presented no facts that Wells Fargo acted in bad faith.*

Should the Court entertain this novel "claim," Defendants must prove Wells Fargo's trade secret misappropriation claim was "arbitrary, vexatious, abusive, stubbornly litigious, or conduct aimed at unwarranted delay or disrespectful of truth and accuracy" to prevail. *Hertz*, 2007 WL 135614, at *1 (citing *Zivian v. Brooke-Hitching*, 28 P.3d 970, 974 (Colo. App. 2001)); *W. United Realty, Inc. v. Isaacs*, 679 P.2d 1063, 1069 (Colo. 1984); *see also Becker v. Becker*, 68 P.3d 567, 569 (Colo. App. 2003). A showing that Wells Fargo was merely incorrect about its

3

subjective belief that trade secrets were threatened is insufficient to rise to the level of "bad faith" as a matter of law.  *See Hertz*, 2007 WL 135614, at *1.

This premise is true even if Defendants were, somehow, able to convince a jury that Wells Fargo in fact harbored an improper secondary purpose that motivated the misappropriation claim.  *James H. Moore & Assocs. Realty, Inc. v. Arrowhead at Vail*, 892 P.2d 367, 373 (Colo. App. 1994); *Institute for Prof'l Dev. v. Regis College*, 536 F. Supp. 632, 635 (D. Colo. 1982); *accord* Restatement (Second) of Torts, § 682 comment b ("There is no action for abuse of process when the process is used for the purpose for which it is intended, [although] there is an incidental motive of spite or an ulterior purpose.").

Accordingly, Defendants must prove Wells Fargo brought its misappropriation claim ***solely*** for an improper purpose ***and*** that Wells Fargo did not subjectively believe it had non-public, competitive business information that had been, or was at risk of being, misappropriated.  A rational jury could never reach such a conclusion.

It is undisputed that Wells Fargo believes it has confidential, non-public, proprietary information that provides it a competitive advantage.  [SUMF ¶¶ 1-8, 19-23.]  This information includes, but is not limited to, insurance coverages, structures, objectives, expiration and renewal dates, types of policies, revenues (commissions or fees) associated with each insurance policy, and expertise and advice related to comprehensive and strategic insurance coverages for clients and prospective clients.  [*Id.* at ¶¶ 1-2, 19-23.]  Based on Wells Fargo's understanding of this information and applicable law, Wells Fargo believes it qualifies as a "trade secret."  [*Id.* at ¶ 1.]

As a condition of employment, Wells Fargo requires that its employees enter into confidentiality and non-disclosure agreements.  [SUMF ¶ 3.]  These agreements include

4

acknowledgements that the employees will have access to Wells Fargo's trade secrets through their employment, including the types of records that are protected as trade secrets under the agreements. [*Id.* at ¶ 4.] Wong and Prouty both signed these confidentiality and non-disclosure agreements. [*Id.* at ¶ 6.] McQuate signed a similar confidentiality and non-disclosure agreement with a predecessor, which was subsequently assigned to Wells Fargo. [*Id.* at ¶ 7-8.] In sum, these undisputed facts establish that Wells Fargo actually believed it had protectable trade secrets and that Wells Fargo has contracts in place to limit their dissemination and protect against their improper disclosure. No rational jury could conclude otherwise.

Similarly, no rational jury could find Wells Fargo lacked a colorable basis to believe its trade secrets were in jeopardy. Defendants regularly had access to and reviewed several of Wells Fargo's non-public, proprietary company records that it believed to be trade secrets, including Wells Fargo's monthly reports of clients with policies that were expiring in late 2014. [SUMF ¶¶ 19-23.] Immediately after Defendants' coordinated resignations, certain client-related information was missing, and Wells Fargo clients Cloud Peak Energy and Target Drilling, both of whom Defendants had serviced and both of whose policies were imminently up for renewal, began moving their accounts to Defendants' new employer. [*Id.* at ¶¶ 19-23, 30-31, 35-38, 41.] Because Defendants had serviced these accounts for Wells Fargo, they knew the types of coverages, limits, deductibles, and insurance structure they desired as well as the timing of their current expirations. [*Id.* at ¶¶ 19-23.] Wong had even been actively engaged in negotiating and securing new coverages for Cloud Peak in the months leading up to her resignation. [*Id.* at ¶ 26.] As a result, the undisputed record supports that Wells Fargo had a reasonable belief that Defendants were, *at a minimum*, using their knowledge of its trade secrets to target Cloud Peak,

5

Target Drilling, and potentially other Wells Fargo clients with policies up for renewal to unfairly compete against Wells Fargo.

*Hertz* is dispositive of these counterclaims. *Hertz* involved counterclaims asserting trade secret misappropriation. There, this Court determined that an arguably frivolous trade secret claim did not rise to the level of "bad faith" due to the counterclaimant's subjective belief that the material at issue were trade secrets, even if the belief was manifestly erroneous. *Hertz*, 2007 WL 135614, at *1. Instead, the counterdefendants could establish only the counterclaimant's "manifest error" and that the claim was meritless (potentially even frivolous); but, that conduct did not rise to the level of "arbitrary, vexatious, abusive, or stubbornly litigious, and may also include conduct aimed at unwarranted delay or disrespectful of truth and accuracy." *Id.* (citation omitted). Accordingly, the Court rejected the counterdefendants assertion of "bad faith" and professed entitlement to attorneys' fees as a matter of law. *Id*.

Here, as in *Hertz*, the undisputed facts demonstrate that Wells Fargo subjectively believed in the merits and brought the claim in good faith. As a result, Wells Fargo is entitled to summary judgment in its favor on Defendants' bad faith "counterclaims."

### C. Plaintiff Is Entitled To Summary Judgment On Defendants' Abuse Of Process Counterclaims.

To prevail on their abuse of process counterclaims, Defendants must prove that Wells Fargo: (1) had an ulterior purpose for initiating the underlying action; (2) took an action that was improper in the regular course of legal proceedings; and (3) caused them damages. *See Aztec Sound Corp. v. W. States Leasing Co.*, 510 P.2d 897, 899 (Colo. App. 1973); *Walker v. Van Laningham*, 148 P.3d 391, 394 (Colo. App. 2006) (requiring "proof of willful actions by defendant in the use of process which are not proper in the regular conduct of the proceeding").

Defendants have not provided sufficient evidence to survive summary judgment on these counterclaims.

### 1. *Defendants have presented no evidence that Wells Fargo had an ulterior purpose in bringing the trade secret misappropriation claim.*

An ulterior purpose is one that the legal proceeding was not designed to accomplish. Usually, the ulterior purpose is to "obtain an advantage in a collateral matter or to achieve the surrender of property or the payment of money." *Hertz v. Luzenac Group*, 576 F.3d 1103, 1117 (10th Cir. 2009).

Defendants allege in conclusory fashion that Wells Fargo filed this action "for the purpose of publicizing the action and damaging [Defendants]' reputation and business relationships." [Doc. 36-1 at p. 22 ¶ 46; Doc. 37-1 at pp. 22-23 ¶ 50; Doc. 38-1 at p. 24 ¶ 40.] Defendants' argument apparently rests on their unsupported allegations that Wells Fargo: (1) failed to identify any specific document or other tangible item taken and retained by Defendants and (2) failed to assert any factual support indicating Defendants recruited one another to leave Wells Fargo.

On the contrary, it is undisputed that Wells Fargo believes Defendants misappropriated its trade secrets (*see* Section II.B.2 above), and the circumstantial evidence strongly points to concerted, conspiratorial activity by Defendants to compete unfairly with Wells Fargo, which they subsequently did. **[**SUMF ¶¶ 19-23, 26-31, 35-47.**]**  Thus, the same undisputed facts that require summary judgment on Defendants' bad faith counterclaims compel the same conclusion here.

7

### *2.   Defendants presented no evidence that Wells Fargo improperly used the legal process in filing this action.*

Defendants simply allege that Wells Fargo has brought similar claims against former employees and that Wells Fargo seeks to damage Defendants' "professional reputation[s] by publicizing serious and unfounded allegations against [them]."  [Doc. 36-1 at p. 22 ¶ 46; Doc. 37-1 at pp. 22-23 ¶ 50; Doc. 38-1 at p. 24 ¶ 40.]  These allegations are simply not enough to withstand summary judgment.  "An improper use of the legal process occurs when a particular procedural tool is used in an attempt to accomplish a result which that tool, when properly used, could not provide."  *Gustafson*, 901 F. Supp. 2d at 1305 (citing *Am. Guar. & Liab. Ins. Co. v. King*, 97 P.3d 161, 170 (Colo. App. 2003) (finding an abuse of process when party filed lawsuit against the wife without a valid claim to obtain money from husband)); *Lauren Corp. v. Century Geophysical Corp.*, 953 P.2d 200, 202 (Colo. App. 1998) (party requested a declaratory judgment not to obtain relief, but to coerce the opposing party to transfer its software to a third party).

In other words, "[i]f the action is confined to its regular and legitimate function in relation to the cause of action stated in the complaint, ***there is no abuse of process, even if the plaintiff had an ulterior motive in bringing the action or if he knowingly brought suit upon an unfounded claim***."  *Walker*, (quoting 1 Am. Jur. 2d *Abuse of Process* § 13 (1962)) (emphasis added).  Because Wells Fargo had a subjective belief that its trade secrets had been misappropriated, and because its requested relief seeks to recover the monetary damages Defendants caused, the abuse of process counterclaims fail as a matter of law.

*Gustafson v. American Family Mutual Insurance Company*, 901 F. Supp. 2d 1289 (D. Colo. 2012) is instructive.  In *Gustafson*, American Family Insurance filed a claim against a

former employee requesting damages and injunctive relief because of his alleged breach of contract, misappropriation of trade secrets, computer fraud, deceptive trade practices, and intentional interference with contractual obligations.  *Id.* at 1306.  The relief sought was consistent with the claims American Family alleged and, had American Family prevailed, it could have secured such relief.  The court noted that American Family had a "colorable basis" to assert the former employee's actions were prohibited under the parties' agreement and consequently dismissed the former employee's abuse of process claim on summary judgment.  As a matter of law, this action, much like American Family's action, is ***not*** an example of using a "legal proceeding primarily to accomplish a purpose that the proceeding was not designed to achieve."  *Yadon v. Lowry*, 126 P.3d 332, 337 (Colo. App. 2005).

For each of these independent reasons, Wells Fargo is entitled to summary judgment on Defendants' abuse of process counterclaims.

### D. Wells Fargo Is Entitled To Summary Judgment On Defendants' Intentional Interference With Prospective Business Relations Counterclaims.

Colorado recognizes the intentional interference with business relations tort in narrow circumstances.  To prevail on this claim, Defendants must prove that Wells Fargo wrongfully induced a third party not to enter into a contract with Defendants, and Defendants suffered damages as a result.  *See Harris Grp., Inc. v. Robinson*, 209 P.3d 1188, 1195-96 (Colo. App. 2009); *MDM Grp. Assocs., Inc. v. CX Reinsurance Co.*, 165 P.3d 882, 886 (Colo. App. 2007).  Thus, to survive summary judgment, Defendants must provide sufficient evidence to establish "'a reasonable likelihood or probability that a contract would have resulted' with an identifiable third party but for [Wells Fargo's] alleged wrongful intentional interference."  *Virtual Cloud*

9

*Servs., Inc. v. CH2M Hill, Inc.*, 02-CV-01004, 2006 WL 446044, at *16 (D. Colo. Feb. 21, 2006) (quoting *Klein v. Grynberg*, 44 F.3d 1497, 1506 (10th Cir. 1995)).  No such evidence exits.

> **1.  Defendants have not identified any specific third parties with whom they were allegedly in the process of contracting during the time period at issue.**

Defendants generally allege they "had business relationships with third parties in the mining industry."  [Doc. 36-1 at p. 23 ¶ 32; Doc. 37-1 at p. 24 ¶ 35; Doc. 38-1 at p. 22 ¶ 25.]  These bald allegations are simply not enough.  Failure to identify the third party Wells Fargo allegedly interfered with entitles Wells Fargo to summary judgment on these counterclaims.  *See id.* (identifying relationships with both the State of Colorado and the Federal Emergency Management Agency); *Daniluk v. Norfolk S. Ry.*, 13-cv-01304-CMA-CBS, 2015 WL 148560, at *3 (D. Colo. Jan. 12, 2015) (identifying relationship with Superloads); *Hertz*, 576 F.3d at 1119-20 (identifying relationship with IMI Fabi).

> **2.  Assuming arguendo that Defendants had identified a third party relationship, Defendants failed to present any evidence there was a reasonable likelihood of contracting with that third party.**

To survive summary judgment, Defendants must provide sufficient evidence there is "a reasonable likelihood of probability that a contract would have resulted; there must be something beyond a mere hope."  *Hertz*, 576 F.3d 1103, 1119; *Klein*, 44 F.3d at 1506.  In *Hertz*, to support the "reasonable likelihood" requirement, the plaintiff submitted an email exchange discussing a proposed business relationship between himself and a company with whom he had ongoing business relations.  *Id.* at 1111.  The third party expressed initial interest and even acknowledged that it was looking at developing new products, like plaintiff proposed.  *Id.*  However, based on the emails, the court found the third party's interest to be nothing more than "lukewarm" – not

10

evidence that the third party shared the plaintiff's desire to contract. *Id.* at 1120. On balance, the court found that these exchanges failed to establish a "reasonable probability" that the parties would consummate the business relationship plaintiff sought to recover. *Id.*

Defendants failed to produce any evidence that there was a concrete probability of contracting with any third party, and accordingly, Wells Fargo is entitled to summary judgment.[1]

### 3. *Defendants have not produced any evidence that Wells Fargo acted wrongfully or improperly.*

"Wrongful means" includes physical violence, fraud, civil suits, and criminal prosecutions. *Occusafe, Inc. v. EG & G Rocky Flats, Inc.*, 54 F.3d 618, 623 (10th Cir. 1995). The record is devoid of any evidence establishing even an inference that Wells Fargo employed wrongful means.

Defendants allege that Wells Fargo "initiated this action for a purpose other than that of securing the proper adjudication if its claims." [Doc. 36-1 at pp. 21 ¶ 40; Doc. 37-1 at pp. 22 ¶ 43; Doc. 38-1 at pp. 23 ¶¶ 33.] As discussed above in Section II.B.2, to demonstrate wrongfulness or improper action, Defendants must show Wells Fargo brought its claims ***solely*** for an improper purpose and that Wells Fargo did not subjectively believe the validity of its claims. Because Wells Fargo had contractual rights at issue, and because it had a subjective belief that trade secrets existed and had been misappropriated, Defendants cannot use the filing of this action as grounds for wrongfulness as a matter of law. *Hertz*, 2007 WL 135614, at *1; *Nobody in Particular Presents, Inc. v. Clear Channel Commc'ns, Inc.*, 311 F. Supp. 2d 1048, 1119 (D. Colo. 2004) ("A defendant does not engage in improper conduct, so as to be liable for

---

[1] Moreover, without evidence of a "reasonable probability" of a concrete business opportunity with a specific third party, Defendants have no evidence of damages, which is an independent element of the claims.

11

intentional interference, if . . . the defendant's purpose is, at least in part, to advance its own interests."); *Ervin v. Amoco Oil Co.*, 885 P.2d 246, 255 (Colo. App. 1994) (there can be no liability "when the act claimed to have caused in the improper interference is conduct which the actor has a definite legal right to engage in without qualification"); *Radiology Prof'l Corp. v. Trinidad Area Health Ass'n, Inc.*, 565 P.2d 952, 955 (Colo. App. 1977) (a contractual entitlement is an "absolute right" that "may be exercised without liability [for intentional interference] regardless of motivation"). Wells Fargo is entitled to summary judgment for this reason as well. *Nobody in Particular Presents*, 311 F. Supp. 2d at 1082 ("Improper conduct is a necessary element of a claim for intentional interference with prospective business relations.").

Accordingly, no rational jury could find Wells Fargo intentionally interfered with Defendants' prospective business relations, and Wells Fargo is entitled to summary judgment on Defendants' counterclaims.

### E. Neither McQuate Nor Prouty Is Entitled To Recovery On His Claim For Unpaid Vacation As A Matter Of Law.

Defendants McQuate and Prouty allege they are owed unpaid vacation time pursuant to the Colorado Wage Claim Act ("CWCA"). More precisely, they assert entitlement to "paid vacation time" pursuant to Wells Fargo's employee handbook; the paid vacation time was earned and determinable as of their resignations; and, they made a written demand for the wages in their resignation letters. [Doc. 36-1 at pp. 19-20 ¶¶ 23-30; Doc. 37-1 at pp. 20-21 ¶¶ 26-33.]

Under the CWCA, when an employee resigns, his "wages or compensation shall become due and payable upon the next regular payday." C.R.S. § 8-4-109(1)(b). The CWCA defines "wages" or "compensation" to mean ***only***: (1) the value of labor or services provided, (2) bonuses or commissions, and (3) "[v]acation pay earned in accordance with the terms of any

12

agreement." C.R.S. § 8-4-101(8) ("If an employer provides paid vacation for an employee, the employer shall pay upon separation from employment all vacation pay earned and determinable in accordance with the terms of any agreement between the employer and the employee.")

The CWCA neither creates a substantive right to wages nor determines whether wages are due; it merely sets payment procedures. *Fang v. Showa Entetsu Co.*, 91 P.3d 419, 422 (Colo. App. 2003); *Barnes v. Van Schaack & Co.*, 787 P.2d 207, 210 (Colo. App. 1990) ("The Wage Claim Act does not itself create any substantive right to compensation for labor and services performed. Rather, it establishes minimal requirements concerning when and how agreed compensation must be paid . . . ."). As such, only a private agreement can create the substantive right to payment of earned and determinable vacation time.

### 1. *Neither McQuate nor Prouty earned paid "vacation" under an agreement.*

Here, liability turns on: (1) whether Wells Fargo agreed to provide paid *vacation* time to McQuate or Prouty, as that is the only paid leave time sought in their counterclaims; and, (2) whether the vacation time was "earned" at the time of each's resignation. Accordingly, McQuate's and Prouty's vacation counterclaims live or die by the applicable policies in Wells Fargo's Handbook.[2]

As an initial matter, McQuate's and Prouty's claims fail because Wells Fargo does not provide to **any** employee "vacation," *per se*; that is, it has no policy dedicated to vacation. Instead, Wells Fargo provides "Paid Time Off" (or "PTO") to eligible employees to use for any

---

[2] McQuate and Prouty respectively allege they accrued and earned paid vacation time "under the terms of [McQuate's] Employment Agreement" and "under the terms of Plaintiff's Employee Handbook." [Doc. 36-1 at pp. 19-20 ¶ 25; Doc. 37-1 at p. 20 ¶ 28.] However, McQuate's Employment Agreement entitles him to paid "vacation in accordance with Employer's policy[,]" and nothing more. [SUMF ¶ 9.]

13

number of reasons, including what otherwise would have been vacation time, personal or family illness, school activities or conferences, variable holidays, religious observance, personal business, or even weather problems. [SUMF ¶¶ 10-11.**]** This PTO replaces the stand-alone, paid leave programs, doing away with distinctions for vacation, sick leave, and the like. [*Id.* at ¶ 10.] Thus, McQuate's and Prouty's claims fail because there is no "vacation" time offered by Wells Fargo—and their counterclaims are expressly limited to "vacation" pay.[3] Indeed, the CWCA does not entitle employees to earned and determinable sick pay, holiday pay, or anything other than vacation pay.

No matter, even if McQuate's and Prouty's counterclaims had sought recovery of PTO, McQuate and Prouty were not eligible. Wells Fargo's policies are clear: Wells Fargo only "provides ***eligible*** [employees] with paid time off." [SUMF ¶ 10.] (emphasis added). To be eligible, an employee must be "in a regular or part-time position with ***base salary*** or ***hourly rate***." [*Id.* at ¶ 11] (emphasis added).

There is no genuine dispute of fact that Wells Fargo did not pay either McQuate, a Senior Sales Executive, or Prouty, a Sales Executive, on an hourly or salaried basis. [SUMF ¶¶ 12-13, 15-18.] The only *facts* on the issue establish McQuate and Prouty, like other Sales Executives and Senior Sales Executives with Wells Fargo, were paid under the Wells Fargo Insurance Services USA Inc. Insurance Brokers Sales Incentive Plan. [*Id.* at ¶¶ 15-16.] Under this commission-based pay plan, an employee receives a forgivable draw until the employee's annual revenues reach four times the value of the employee's annual draw, at which point the employee

---

[3] McQuate and Prouty cannot equate the "vacation" they seek with compensation for the much broader PTO benefits. The plain language of the CWCA precludes such broad relief. *See* C.R.S. § 8-4-101(8)(III).

14

receives additional sales commissions. [*Id.* at ¶ 15.] Employees under the commission pay plan are permitted to take time away from work, but any time spent not generating leads or closing deals may negatively impact compensation. [*Id.* at ¶¶ 16-18.] Under this pay structure, the interests of Wells Fargo and its commissioned employees align and Wells Fargo does not provide vacation time or track days off work for such employees. [*Id.* at ¶ 17.] As such, ***McQuate and Prouty were simply not eligible or entitled to earn paid time off*** under the policy and judgment is appropriate.

### 2. *Neither McQuate nor Prouty is entitled to penalties, attorneys' fees, or costs.*

Even if they could show entitlement to the paid "vacation" they claim, they are not entitled to the penalties and attorneys' fees they request. The CWCA permits the court to award attorneys' fees, costs, and penalties to a former employee if the employee makes a written demand for all earned, vested, determinable wages within 60 days of separation and the employer willfully fails to mail such wages within 14 days of the demand. *See* C.R.S. §§ 8-4-109(3)(a)-(a.5), 8-9-109(c), 8-9-110. The law reasonably provides employer this opportunity to cure before a court may impose this additional, punitive, and potentially significant monetary liability.

McQuate and Prouty admit they resigned on August 22, 2014. [SUMF ¶ 30.] It is also undisputed that, in their respective resignation letters, McQuate asked Wells Fargo to "include in my final compensation any accrued vacation time and benefits" and Prouty claims that he took "a total of 4 PTO days – 2 days in 2013 and 2 days in 2014" without a request for payment of any additional accrued vacation time. [*Id.* at ¶¶ 32-33.] These resignation letters are not sufficient "demands" for wages under the CWCA.

15

First, neither McQuate's nor Prouty's written "demand" meets the standards required by the CWCA because their resignation letters did not state "where such payment can be received." C.R.S. § 8-4-109(3)(a) ("the employee . . . shall make a written demand for the payment . . . and *shall* state in the demand where such payment can be received" (emphasis added)).

Second, neither McQuate nor Prouty demanded Wells Fargo to pay a sum certain, or even identified the number of vacation hours (or corresponding wages) they believed they had earned. The CWCA requires an employee to demand *a specific* "*amount*" of wages or compensation." C.R.S. § 8-4-109(3)(a.5) (emphasis added). If the employer disputes *that amount*, and the employee ultimately proves *the amount demanded* is due, the employer is liable for penalties and attorneys' fees on *the demanded amount*. *Id.* If the employer pays a portion of *the amount*, the employer is liable only on the amount above what it paid. *See id.*

Here, Prouty did not ask – much less demand – Wells Fargo to pay him anything at all. Therefore, Prouty failed to avail himself to the procedures and potential right to recover penalties, attorneys' fees, and costs under the CWCA. And, while McQuate ambiguously asks Wells Fargo to pay "any accrued vacation time and benefits," his "request" fails to establish he had "accrued" *or even believed* he was entitled to any vacation time for Wells Fargo to pay. In short, McQuate never made a demand for unpaid vacation time and his general request for "any accrued vacation time" failed to notify Wells Fargo that he disputed Wells Fargo's conclusion that McQuate was entitled to nothing. Such circumstances cannot warrant penalties for the "willful" withholding of vacation time or justify an order for penalties, attorneys' fees, or costs under the CWCA.

Thus, even if McQuate's or Prouty's counterclaims survive summary judgment, their respective failure to adhere to the statute's prerequisites entitle Wells Fargo to summary judgment as to each's request for penalties, attorneys' fees, and costs. *See* C.R.S. §§ 8-4-109, 8-4-110.

## **CONCLUSION**

As a result of the foregoing, Wells Fargo respectfully moves for judgment in its favor on all of Defendants' counterclaims.

DATED this 1st day of June, 2015.

Respectfully submitted,

*s/ Christopher T. Patrick*

Timothy M. Kratz
Christopher T. Patrick
Jackson Lewis P.C.
950 17th Street, Suite 2600
Denver, Colorado 80202
(303) 892-0404 (telephone)
(303) 892-5575 (facsimile)
Tim.Kratz@jacksonlewis.com
Christopher.Patrick@jacksonlewis.com

Peter R. Bulmer
Jackson Lewis P.C.
150 N. Michigan Ave., Suite 2500
Chicago, Illinois 60601
(312) 787-4949 (telephone)
(312) 787-4995 (facsimile)
BulmerP@jacksonlewis.com

*Attorneys for Plaintiff Wells Fargo Insurance Services USA, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 1st day of June, 2015, I filed the foregoing **PLAINTIFF'S MOTION FOR SUMMARY JUDGEMENT ON ALL COUNTERCLAIMS** with the Clerk of Court using the CM/ECF system, which sends electronic notification of this filing to all counsel of record in this case, including:

Amy L. Miletich
Amanda K. Slater
Brendan D. Benson
MiletichCohen PC
1660 Wynkoop, Suite 1160
Denver, CO  80202
AMiletich@mcpclaw.com
ASlater@mcpclaw.com
BBenson@mcpclaw.com

*s/ Lori Johnson*
For Jackson Lewis P.C.